UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

FILED
May -7, 2010
MAY -7 2010
JUDGE AMY ST. EVE
United States District Court

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 06 CR 75-5 |
| vs. | ) | Judge Amy J. St. Eve |
| | ) | |
| SANDY FURY | ) | |

## PLEA AGREEMENT

1.     This Plea Agreement between the United States Attorney for the Northern District of Illinois, PATRICK J. FITZGERALD, and defendant SANDY FURY, and her attorney, MARK WERKSMAN, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure and is governed in part by Rule 11(c)(1)(A), as more fully set forth below.  The parties to this Agreement have agreed upon the following:

### Charges in This Case

2.     The indictment in this case charges defendant with conspiracy, in violation of Title 18, United States Code, Section 371 (Count One), and copyright infringement, in violation of Title 17, United States Code, Section 506(a)(2) and Title 18, United States Code, Sections 2319(c)(1) and (2) (Count Five).

3.     Defendant has read the charges against her contained in the indictment, and those charges have been fully explained to her by her attorney.

4.     Defendant fully understands the nature and elements of the crimes with which she has been charged.

**Charge to Which Defendant is Pleading Guilty**

5.     By this Plea Agreement, defendant agrees to enter a voluntary plea of guilty to the following count of the indictment: Count One, which charges defendant with conspiring to: (a) willfully infringe a copyright by reproducing and distributing at least ten infringing copies of one or more copyrighted works, with a total retail value of more than $2,500, during a 180-day period, in violation of Title 17, United States Code, Section 506(a)(2) and Title 18, United States Code, Sections 2319(c)(1); (b) circumvent a technological measure that protects a copyrighted work by willfully, and for purposes of private financial gain, circumvent a technological measure that effectively controls access to a work protected under Title 17 of the Unietd States Code, in violation of Title 17, United States Code, Sections 1201(a)(1)(A) and 1204(a)(1); and (c) willfully and for purposes of private financial gain traffic in a technology, product, service, and device, knowing that the technology, product, service, and device was primarily designed and produced for the purpose of circumventing a technological measure that effectively controlled access to a copyrighted work, in violation of Title 17, United States Code, Sections 1201(a)(2)(A) and 1204(a)(1).  In addition, as further provided below, defendant agrees to the entry of a forfeiture judgment.

**Factual Basis**

6.     Defendant will plead guilty because she is in fact guilty of the charge contained in Count One of the indictment.  In pleading guilty, defendant admits the following facts and

2

that those facts establish her guilt beyond a reasonable doubt, and establish a basis for forfeiture of the property described elsewhere in this Plea Agreement:

Beginning in or about 1998 and continuing until on or about June 29, 2005, in the Northern District of Illinois, Eastern Division, and elsewhere, defendant did knowingly conspire and agree with her co-defendants to: willfully infringe a copyright by reproducing and distributing at least ten infringing copies of one or more copyrighted works, with a total retail value of more than $2,500, during a 180-day period, in violation of Title 17, United States Code, Section 506(a)(2), and Title 18, United States Code, Section 2319(c)(1); circumvent a technological measure that protects a copyright work, by willfully, and for purposes of private financial gain, circumvent a technological measure that effectively controls access to a work protected under Title 17 of the United States Code, in violation of Title 17, United States Code, Sections 1201(a)(1)(A), and 1204(a)(1); and willfully and for purposes of private financial gain traffic in a technology, product, service, and device, knowing that the technology, product, service, and device was primarily designed and produced for the purpose of circumventing a technological measure that effectively controlled access to a copyrighted work, in violation of Title 17, United States Code, Sections 1201(a)(2)(A), and 1204(a)(1), all in violation of Title 18, United States Code, Section 371.

More specifically, defendant and her co-conspirators were leaders, members, and associates of the software piracy group known as "RISCISO." "RISC" was an acronym for

Rise in Superior Couriering, while "ISO" referred to a file format commonly used for the storage and transfer of pirated software. RISCISO was an underground organization, founded in approximately 1993, dedicated to the illegal distribution of large volumes of copyrighted software, movies, and games over the Internet, particularly recently released items, for the use and benefit of members and affiliates of RISCISO, and of persons to whom RISCISO members and affiliates further distributed those items.

In exchange for their contributions to RISCISO's unlawful objectives, members of the conspiracy received access through the Internet to computers that stored extensive libraries of illegally copied copyrighted software, games, and movies. (Computers used to maintain these libraries were referred to as "warez sites" or "warez servers".) RISCISO members set up computer servers that hosted warez sites used to store and distribute copyrighted software, movies, and games. Some members of the conspiracy devoted substantial time and resources to RISCISO-related activities.

Through the RISCISO servers, the conspirators obtained, and made available to others associated with RISCISO, unauthorized copies of copyrighted works, including software, movies, and games; moreover, the conspirators did not own the copyrighted works uploaded and downloaded on the RISCISO servers; and did not have the license, permission, or other authority from the owners of those copyrighted works to reproduce and distribute them or to make them available for downloading from RISCISO's servers.

4

The conspirators and other RISCISO members employed sophisticated security measures to conceal their activities, communications, and identities from law enforcement, and to ensure that only persons authorized by the leaders of RISCISO could gain access to the software, movies, and games stored on RISCISO's servers. Security measures employed by members of the conspiracy included the following, among others: carefully screening persons to be given membership in RISCISO and access to its warez sites, for the purpose of ensuring that those admitted were committed to software piracy, would benefit the organization, and were not affiliated with law enforcement; limiting access to RISCISO's warez sites to authorized users entering the site through known Internet Protocol ("IP") addresses with pre-established IDs and passwords; using private, invitation-only, password-protected Internet Relay Chat ("IRC") channels to communicate regarding the affairs of the conspiracy, and conducting those communications using screen names, rather than true names; using encryption to protect stored files; and using encryption to disguise what files were being requested for downloading by members in the IRC channel.

The RISCISO leadership, RISCISO members, and users of RISCISO-affiliated warez sites communicated with each other on private Internet Relay Chat ("IRC") channels, such as #risciso, #dvdiso, and others. RISCISO members also made encrypted queries of the RISCISO server for particular files in the IRC channel at the same time they participated in conversations, and communicated with one another via direct IRC communication. In their various IRC channels and communications, RISCISO members discussed, in real time, the

activities of RISCISO, the invitation of new members to the group, the introduction of new users and software piracy groups to RISCISO-affiliated warez sites, and affiliation by RISCISO with other warez sites. IRC channels were also used by the leaders of RISCISO to encourage and organize its members in distributing copyrighted software and finding additional resources to do so. RISCISO members at times held group meetings in the IRC channel #risciso to discuss matters relating to the group's activities and operation. An individual with the RISCISO username "chucky" was RISCISO's leader for the last years of the organization's existence, and typically led these meetings and set the agenda for them.

In approximately 1998, RISCISO members surreptitiously set up a warez server named "RM". After a few years of use, this server was taken down. In approximately 2002, "chucky", "vman", and other RISCISO members set up other warez servers named "RM1" or "RM2." The RISCISO members who helped set up these warez servers received accounts on the servers and were allowed to download copyrighted content from them.

In or about December 2003, RISCISO members started using a new server named "RM2" to run concurrently with RM1 server that was operational. This RM2 server was administered by "vman".

In or about the end of 2004, RM1 started experiencing technical difficulties and finally went offline in or about April 2005. As a result, the RM2 server became RISCISO's main server for storing and distributing copyrighted software, movies, and games.

RISCISO members created a directory of the software, movies, and games available on the RISCISO servers that could be viewed by each user who logged on to the server. During their period of operation, numerous copyrighted computer software programs, games, and movies were made available for downloading on the RISCISO servers, in violation of those copyrights. The types of copyrighted software made available on the RISCISO servers included, among others: operating systems; utilities; applications such as word processing programs, data analysis programs, spreadsheets, communications programs, graphics, and desktop publishing programs; and games that could be played on computers and on stand-alone video gaming consoles.

During the time that RM2 was in operation, RISCISO members who were allowed access to RM2 by "chucky", "vman, and others, uploaded and downloaded software, games, movies, and other files to and from the RM2 server. During the 180-day period ending on or about April 24, 2005, the copyrighted content uploaded to or downloaded from RM2 with a total retail value of more than $2,500, and included:

* software such as Ulead Picture Show 3 Deluxe, Microsoft Windows XP Media Center Edition 2005, Microsoft Streets and Trips 2005, Cakewalk Sonar4 Producer, Ahead Nero Burning Rom Version 6.6 Ultra Edition, Autodesk Mechanical Desktop Version 2006, Windows XP Pro 64-bit, Intel Fortran Compiler Version 8.1, Husqvarna Viking 3D Embroidery System, Hewlett-Packard Openview Network Node Manager Version 7.5, Roxio Easy Media Creator Version 7.5 and Windows Server 2003 Enterprise VL Edition;

* movies such as Sideways, The Pacifier, The Aviator, Closer, The Incredibles, Meet the Fockers, Hostage, Vanity Fair, Oceans 12, Spanglish, Shark Tale, Alexander, The Phantom of the Opera, Sin City, Flight of Phoenix, Collateral, and Robots; and

\*      games such as Tiger Woods PGA Tour 2005, Half Life 2, Tony Hawk's Underground 2, Tribes Vengeance, Super Streetfighter II, NASCAR Simracing, and WW II Sniper.

At times, RISCISO members used, and exchanged through the RISCISO file servers, tools which were primarily designed and produced for the purpose of circumventing the access control and copy prevention systems embedded on digital copies of copyrighted works. Manufacturers of copyrighted software, movies, and games at times use various measures to protect against unauthorized use and copying of their products. At times software manufacturers make available evaluation or "trial" versions of software applications that are programmed to expire after a certain time, or that have been programmed to make unavailable certain functions in the software; in addition, at times software manufacturers use mechanisms to block unauthorized copying of the software. RISCISO members at times identified, obtained, and tested tools to defeat these protective measures. These tools included "keygens" (small software applications that generated licensing keys when executed), "serials" (licensing or product keys that could enable a software's functions), and "cracks" (small applications that disabled the copyright protection of software). The keygens, serials, and cracks that were found to successfully circumvent the manufacturer's protective measures by enabling trial versions to function beyond the expiration of the "trial" period, or allowing users full access to software for which no licensing fee had been paid, at times were placed into a directory on the RM2 server and at times were posted in RISCISO's IRC channel for distribution to members. The RISCISO IRC channels were used

by members to place requests for specific serials that would allow requesting members to bypass the copyright protection of certain software without paying a licensing fee.

The tools placed on the RM2 warez server and used by RISCISO members to circumvent measures designed to limit access to certain software applications included, but were not limited to, keygens for the following software applications: (a) FaceMorpher v. 1.5; (b) ScriptFTP v. 1.4; (c) Backup to DVD CD v.5.1.138; (d) First.Alert Service Monitor.v9.76.01; (e) NoClone.Enterprise.Edition.v3.1.204; (f) WorldTV.v7.1; and (g) ISOBuster.Pro.v1.8.0.4.

### Defendant's Role in RISCISO

Defendant became a member of RISCISO in or before approximately ~~1998~~ 2000, and used the online nicknames "TheAsylum" and "Asylum" to access RISCISO servers. Defendant at times served as a software "packager" for RISCISO, compressing software that had been cracked and was ready for release and placing it on pre-release sites affiliated with RISCISO. Defendant also at times served as a courier for RISCISO, assisting in moving files between RISCISO and other warez groups. Defendant at times actively participated in IRC chats concerning the operation of RISCISO. Defendant at times downloaded copyrighted movie and software files from RISCISO for her personal use. In furtherance of the conspiracy and to further its unlawful objectives, defendant committed overt acts, including her participation in IRC chat discussions on or about August 24, 2004, December 8, 2004, and June 5, 2005 relating to the operation of the RISCISO group.

## **Maximum Statutory Penalties**

7.     Defendant understands that the charge to which she is pleading guilty carries the following statutory penalties:

a.     A maximum sentence of 5 years' imprisonment.  This offense also carries a maximum fine of $250,000, or twice the gross gain or gross loss resulting from that offense, whichever is greater.  Defendant further understands that the judge also may impose a term of supervised release of not more than three years.

b.     Defendant further understands that the Court must order restitution to the victims of the offense in an amount determined by the Court unless it determines that restitution is not applicable because the number of identifiable victims is so large as to make restitution impracticable or determining complex issues of fact related to the cause or amount of the victim losses would complicate or prolong the sentencing process to a degree that the need to provide restitution to any victim is outweighed by the burden on the sentencing process.

c.     In accord with Title 18, United States Code, Section 3013, defendant will be assessed $100 on the charge to which she has pled guilty, in addition to any other penalty or restitution imposed.

## **Sentencing Guidelines Calculations**

8.     Defendant understands that in imposing sentence the Court will be guided by the United States Sentencing Guidelines.  Defendant understands that the Sentencing

Guidelines are advisory, not mandatory, but that the Court must consider the Guidelines in determining a reasonable sentence. The parties have no agreements regarding the applicable Sentencing Guidelines in this case, and both parties are free to take whatever positions they deem appropriate regarding the application of the Sentencing Guidelines.

### Agreements Relating to Sentencing

9.     Each party is free to recommend whatever sentence it deems appropriate.

10.     It is understood by the parties that the sentencing judge is neither a party to nor bound by this Plea Agreement and may impose a sentence up to the maximum penalties as set forth above.  Defendant further acknowledges that if the Court does not accept the sentencing recommendation of the parties, defendant will have no right to withdraw her guilty plea.

11.     Regarding restitution, the parties agree that restitution is not applicable because the number of identifiable victims is so large as to make restitution impracticable, and determining complex issues of fact related to the cause or amount of the victim losses would complicate or prolong the sentencing process to a degree that the need to provide restitution to any victim is outweighed by the burden on the sentencing process.

12.     Defendant agrees to pay the special assessment of $100 at the time of sentencing with a cashier's check or money order payable to the Clerk of the U.S. District Court.

13.   After sentence has been imposed on the count to which defendant pleads guilty as agreed herein, the government will move to dismiss the remaining count of the indictment as to this defendant.

## Forfeiture

14.   The indictment charges that because the defendant knowingly engaged in conduct in violation of Title 17, United States Code, 506(a)(2) and Title 18, United States Code, Sections 2319(c)(1), she has subjected to forfeiture to the United States, pursuant to Title 18, United States Code, Section 506(b), any infringing copies of any copyrighted works and all implements, devices, or equipment used in the manufacture of such infringing copies, including, but not limited to, the following seized items:

*   Power Mac G4 S/N XB2510XNMXD
*   Black Full Tower Computer
*   Generic mid Tower Computer Serial No. 042626235
*   Palm Tungsten PDA with Serial 00V2A5A31AYN
*   Palm One 64 MB Memory Expansion Card HB28D064MMZ. JPN A303EL85912
*   San Disk Cruzer Mini 128 MB Memory Card  Part 20-90-00107-128 Model SDCZ2-128
*   Dell Inspirion Notebook Computer
*   External Western Digital Hard Drive; Serial No: WMACK1140736
*   2176 CDs and DVDs recovered from defendant's apartment on June 29, 2005.

15.   After entry of defendant's plea of guilty to Count One of the indictment, the government will move to dismiss the forfeiture allegation with respect to the item identified as External Western Digital Hard Drive; Serial No: WMACK1140736, which was inoperable when the government attempted to examine it following its seizure in a search of defendant's

apartment.  The government will return this item to defendant after the entry of her plea of

guilty to Count One and upon her execution of a returned property receipt.

16.     By pleading guilty to the offense charged in Count One of the indictment,

defendant understands that the personal property described above (with the exception of the

hard drive described in paragraph 15 above) is subject to forfeiture as a result of that offense.

17.     With respect to the four computers to be forfeited pursuant to this plea

agreement, namely, the Power Mac G4 S/N XB2510XNMXD, the Black Full Tower

Computer, the Generic mid Tower Computer Serial No. 042626235, and the Dell Inspirion

Notebook Computer, the government agrees as follows:

a.     The government will make reasonable efforts to provide to defendant

copies of files of a personal nature stored on the above-described computers.  These efforts

will include efforts to provide defendant with electronic copies of items stored in the "My

Documents" folders on each computer, and providing defendant with a file listing for each

computer to allow defendant to identify items of a personal nature, including personally

owned music, stored in locations other than the "My Documents" folders.  The government

will make reasonable and good faith efforts to return items so designated by defendant.

Defendant understands that the government does not know, as of the date of the plea

agreement, whether the four computers identified in this paragraph are operable, and whether

it will be possible for the government to provide defendant with copies from any items from

those computers, but the government agrees to make reasonable and good faith efforts to do so.

        b.     Defendant further understands that the government will not provide her with copies of files, whether located in the "My Documents" folder or elsewhere, that it determines to contain information relating to any software piracy organization, to be derived in any way from the activities of a software piracy organization, or to contain material that infringes a copyright. Defendant also understands that the government will not provide her with copies of any operating system or application software stored on these computers.

        c.     Prior to the government's provision of copies of items pursuant to this paragraph, defendant agrees to execute and provide to the government an affidavit representing that none of the files to be copied and provided to her includes infringing copies of any copyrighted work.

    18.    Subject to the provisions of paragraph 17 above, defendant agrees to the entry of a preliminary order of forfeiture relinquishing any right of ownership she has in the above-described property so that this property may be disposed of according to law.

    19.    Defendant understands that forfeiture of this property shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon defendant in addition to the forfeiture judgment.

## Acknowledgments and Waivers Regarding Plea of Guilty

### Nature of Plea Agreement

20.     This Plea Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant regarding defendant's criminal liability in case 06 CR 75-5.

21.     This Plea Agreement concerns criminal liability only.  Except as expressly set forth in this Agreement, nothing herein shall constitute a limitation, waiver or release by the United States or any of its agencies of any administrative or judicial civil claim, demand or cause of action it may have against defendant or any other person or entity.  The obligations of this Agreement are limited to the United States Attorney's Office for the Northern District of Illinois and cannot bind any other federal, state or local prosecuting, administrative or regulatory authorities, except as expressly set forth in this Agreement.

### Waiver of Rights

22.     Defendant understands that by pleading guilty she surrenders certain rights, including the following:

a.      **Trial rights.**  Defendant has the right to persist in a plea of not guilty to the charges against her, and if she does, she would have the right to a public and speedy trial.

i.      The trial could be either a jury trial or a trial by the judge sitting without a jury.  Defendant has a right to a jury trial.  However, in order that the trial be

conducted by the judge sitting without a jury, defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

   ii. If the trial is a jury trial, the jury would be composed of twelve citizens from the district, selected at random. Defendant and her attorney would participate in choosing the jury by requesting that the Court remove prospective jurors for cause where actual bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory challenges.

   iii. If the trial is a jury trial, the jury would be instructed that defendant is presumed innocent, that the government has the burden of proving defendant guilty beyond a reasonable doubt, and that the jury could not convict her unless, after hearing all the evidence, it was persuaded of her guilt beyond a reasonable doubt and that it was to consider each count of the indictment separately. The jury would have to agree unanimously as to each count before it could return a verdict of guilty or not guilty as to that count.

   iv. If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, and considering each count separately, whether or not the judge was persuaded that the government had established defendant's guilt beyond a reasonable doubt.

   v. At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would

be able to confront those government witnesses and her attorney would be able to cross-examine them.

   vi. At a trial, defendant could present witnesses and other evidence in her own behalf.  If the witnesses for defendant would not appear voluntarily, she could require their attendance through the subpoena power of the Court.  A defendant is not required to present any evidence.

   vii. At a trial, defendant would have a privilege against self-incrimination so that she could decline to testify, and no inference of guilt could be drawn from her refusal to testify.  If defendant desired to do so, she could testify in her own behalf.

   b. **Appellate rights.**  Defendant further understands she is waiving all appellate issues that might have been available if she had exercised her right to trial, and may only appeal the validity of this plea of guilty and the sentence imposed.  Defendant understands that any appeal must be filed within 14 calendar days of the entry of the judgment of conviction.

   c. Defendant understands that by pleading guilty she is waiving all the rights set forth in the prior paragraphs, with the exception of the appellate rights specifically preserved above.  Defendant's attorney has explained those rights to her, and the consequences of her waiver of those rights.

## Presentence Investigation Report/Post-Sentence Supervision

23.   Defendant understands that the United States Attorney's Office in its submission to the Probation Office as part of the Pre-Sentence Report and at sentencing shall fully apprise the District Court and the Probation Office of the nature, scope and extent of defendant's conduct regarding the charges against her, and related matters.  The government will make known all matters in aggravation and mitigation relevant to sentencing.

24.   Defendant agrees to truthfully and completely execute a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the Court, the Probation Office, and the United States Attorney's Office regarding all details of her financial circumstances, including her recent income tax returns as specified by the probation officer.  Defendant understands that providing false or incomplete information, or refusing to provide this information, may be used as a basis for denial of a reduction for acceptance of responsibility pursuant to Guideline §3E1.1 and enhancement of her sentence for obstruction of justice under Guideline §3C1.1, and may be prosecuted as a violation of Title 18, United States Code, Section 1001 or as a contempt of the Court.

25.   For the purpose of monitoring defendant's compliance with her obligations to pay a fine and restitution during any term of supervised release or probation to which defendant is sentenced, defendant further consents to the disclosure by the IRS to the Probation Office and the United States Attorney's Office of defendant's individual income tax returns (together with extensions, correspondence, and other tax information) filed

18

subsequent to defendant's sentencing, to and including the final year of any period of supervised release or probation to which defendant is sentenced.  Defendant also agrees that a certified copy of this Plea Agreement shall be sufficient evidence of defendant's request to the IRS to disclose the returns and return information, as provided for in Title 26, United States Code, Section 6103(b).

### Other Terms

26.     Defendant agrees to cooperate with the United States Attorney's Office in collecting any unpaid fine and restitution for which defendant is liable, including providing financial statements and supporting records as requested by the United States Attorney's Office.

27.     The government agrees that at the time of defendant's entry into her plea agreement, it will not move to revoke defendant's bond and have defendant remanded into custody.

### Conclusion

28.     Defendant understands that this Plea Agreement will be filed with the Court, will become a matter of public record and may be disclosed to any person.

29.     Defendant understands that her compliance with each part of this Plea Agreement extends throughout the period of her sentence, and failure to abide by any term of the Agreement is a violation of the Agreement.  Defendant further understands that in the event she violates this Agreement, the government, at its option, may move to vacate the

Agreement, rendering it null and void, and thereafter prosecute defendant not subject to any of the limits set forth in this Agreement, or may move to resentence defendant or require defendant's specific performance of this Agreement. Defendant understands and agrees that in the event that the Court permits defendant to withdraw from this Agreement, or defendant breaches any of its terms and the government elects to void the Agreement and prosecute defendant, any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against defendant in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of such prosecutions.

30.    Should the judge refuse to accept defendant's plea of guilty, this Plea Agreement shall become null and void and neither party will be bound thereto.

31.    Defendant and her attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Plea Agreement to cause defendant to plead guilty.

32.     Defendant acknowledges that she has read this Plea Agreement and carefully reviewed each provision with her attorney.  Defendant further acknowledges that she understands and voluntarily accepts each and every term and condition of this Agreement.


AGREED THIS DATE:  5/7/10

PATRICK J. FITZGERALD
United States Attorney

SANDY FURY
Defendant


DAVID GLOCKNER
Assistant U.S. Attorney

MARK WERKSMAN
Attorney for Defendant